IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| Sanjay Krishna,<br><br>Plaintiff,<br><br>v.<br><br>Julie Su, Acting Secretary, United States Department of Labor,<br><br>Defendant. | Case No.: 1:24-cv-10241 |

**COMPLAINT**

Twenty years ago, Congress enacted the American Competitiveness and Workforce Improvement Act and the American Competitiveness in the 21st Century Act to ensure immigration delays would not disrupt the supply of foreign trained, high skilled labor. Today, the greatest threat to the goals Congress sought to achieve through these statutes are delays at the U.S. Department of Labor. It takes Defendant nearly a year to issue final determinations in an *automated* process. In 2005, Defendant's technology expected to produce such final determinations in 45 days. Twenty years later—and leaps and bounds forward in automation and technology—Defendant states that takes 363 days, nearly one year, to issue a PERM certification[1], and in practice it may be longer. For the reasons below, this Court should grant Plaintiff judgment as a matter of law and order Defendant to issue a final PERM decision for Plaintiff immediately.

[1] https://flag.dol.gov/processingtimes (last visited January 29, 2024).

## PARTIES

1. Plaintiff Sanjay Krishna is a citizen and national of India who currently resides in Watertown, Massachusetts.

2. Defendant Julie Su is the Acting Secretary of the United States Department of Labor. In her official capacity—the only capacity in which she is sued—she is in charge of timely adjudication of permanent labor certification program. 8 U.S.C. § 1154(b).

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this case under 28 U.S.C. § 1331.

4. Under § 1331, this Court can hear causes of action under the Administrative Procedure Act ("APA"). *Califano v. Sanders*, 430 U.S. 99 (1977).

5. Under the APA, this Court "shall" compel Defendant to take action on an unreasonably delayed adjudication. 5 U.S.C. § 706(1).

6. This Court further has authority to enter declaratory relief under 28 U.S.C. § 2201.

7. Venue is proper in this case under 28 U.S.C. § 1391(e) because Plaintiff lives in this district and division.

8. Plaintiffs also fall within the zone of interests that Congress sought to protect with the labor certification laws. *Kurapati v. U.S. Bureau of Citizenship & Immigr. Servs.*, 775 F.3d 1255, 1261 (11th Cir. 2014). Plaintiff, therefore, has standing to challenge these delays.

## FACTS

9. Defendant Department of Labor ("DOL") plays an outsized role in the employment-based immigration system. 8 U.S.C. §§ 1154(b), 1182(a)(5).

10. For a vast majority of employment-based green cards, the first step involves a filing with DOL as described below.

11. Before a United States employer may permanently employ a noncitizen, generally, DOL must certify that such employment will not negatively impact the United States labor force:

> Any alien who seeks to enter the United States for the purpose of performing skilled or unskilled labor is inadmissible, unless the Secretary of Labor has determined and certified to the Secretary of State and the Attorney General that—
>
> **(I)** there are not sufficient workers who are able, willing, qualified (or equally qualified in the case of an alien described in clause (ii)) and available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such skilled or unskilled labor, and
>
> **(II)** the employment of such alien will not adversely affect the wages and working conditions of workers in the United States similarly employed.

8 U.S.C. § 1182(a)(5)(A).

12. DOL's Office of Foreign Labor Certification (OFLC) administers the permanent labor certification program at its Atlanta Service Center. *See generally* https://flag.dol.gov/programs/perm[2] (last visited Jan. 29, 2024); 22 C.F.R. § 656.10.

13. The permanent labor certification program is a three-part process.

14. First, an employer must get a prevailing wage from DOL. *See generally* 20 C.F.R. § 656.40. This stage is called the Prevailing Wage Determination. *Id.* At the conclusion of this process, DOL tells the employer the wage level that it must offer and pay a noncitizen employee.

15. Second, an employer must test the labor market to determine if there are any able and willing American workers who can and will fill the position at the prevailing wage. *See generally* 8 C.F.R. § 656.17(e). This stage is called the Labor Market Test.

16. To test the labor market, the employer must place a job advertisement with the relevant state workforce agency, the local newspaper of general circulation, and for professional

---

[2] Notably, DOL also directs people to contact plc.atlanta@dol.gov to check on the status of a PERM application. https://flag.dol.gov/processingtimes (last visited Jan. 26, 2024).

positions—those requiring at least a bachelor's for entry into the profession—additional locations (online, job fairs, etc.). *Id.*

17. If the labor market test identifies no able and willing domestic workers, the employer seeks labor certification from DOL by filing online a Form ETA 9089. 20 C.F.R. § 656.17(a)(1). This stage is called the PERM process.

18. If DOL certifies the PERM and there is a corresponding immigrant visa immediately available, the employer can then petition for an immigrant visa with United States Citizenship and Immigration Services (USCIS) on behalf of their future employee, and USCIS approves or denies the immigrant visa petition. 8 U.S.C. § 1154(b).

19. This case challenges arbitrary and inordinate delays in the third step of this process—the PERM application.

*The PERM Application*

20. In May of 2002, DOL noticed a proposed rule to implement an electronic PERM application. DOL, Labor Certification for the Permanent Employment of Aliens in the United States; Implementation of New System, 67 Fed. Reg. 30466-01, 30467 (May 6, 2002).

21. DOL sought to use computer automation to simplify, streamline, and speed up the PERM process:

> The process for obtaining a permanent labor certification has been criticized as being complicated, time consuming and requiring the expenditure of considerable resources by employers, SWA's and the Federal Government. It can take up to two years or more to complete the process for applications . . . The redesigned system we envision would require employers to conduct recruitment before filing their applications. . . . Employers would be required to submit their applications on forms designed for automated processing to minimize manual intervention to an ETA application processing center for automated screening and processing. After an application has been determined to be acceptable for filing, an automated system would review it based upon various selection criteria that would allow applications to be identified for potential audits before determinations could be made. In

> addition, some applications would be randomly selected as a quality control measure for an audit without regard to the results of the computer analysis.

*Id.* at 30466.

22. The 2002 proposal sought to decide routine, non-audited ETA 9089s in 21 days:

> ***Processing***
>
> Computers would do an initial analysis of the information provided on the "machine readable" application form. Applications that could not be accepted for processing because certain information that was requested by the application form was not provided will be returned to the employer. Applications accepted for processing would be screened and would be certified, denied or selected for audit.
>
> Information on the form may trigger a denial of the application or a request for an audit by Federal regional office staff. The application may also be selected for audit on a random basis as a quality control measure. If an application is not denied or selected for audit we anticipate that the application will be certified and returned to the employer within 21 days.
>
> If the application is selected for audit, we will send the employer a letter with instructions to furnish required documentation supporting the information provided on the application form within 21 calendar days of the date of the request. If the requested information is not received in a timely fashion, the application will be denied.

*Id.*

23. The final rule codified this process, though DOL tempered its expectation of processing times to 45-60 days:

> The combination of pre-filing recruitment, providing employers with the option to complete applications in a web-based environment, automated processing of applications including those submitted by mail, and elimination of the SWA's required role in the recruitment process will yield a large reduction in the average time needed to process labor certification applications. . . . If an application has not been selected for audit, and satisfies all other reviews, the application will be certified and returned to the employer. The employer must immediately sign the application and then submit the certified application to DHS in support of an employment-based I-140 petition. We anticipate an electronically filed application not selected for audit will have a computer-generated decision within 45 to 60 days of the date the application was initially filed.

DOL, Labor Certification for the Permanent Employment of Aliens in the United States; Implementation of New System, 69 FR 77326-01, 77328 (Dec. 27, 2004).

24. In 2004, DOL intended routine PERM applications to be completed 60 days.

25. Nearly 20 years later, it takes 363 days on average to decide routine PERM applications. *See* https://flag.dol.gov/processingtimes (last visited Jan. 26, 2024).

26. This figure—363 days—reflects "the average processing time for all PERM applications for the most recent month." *Id.*

27. There is no rational explanation for the disparity between DOL's intended processing times and its actual processing times.

28. The OFLC's budget has increased by more than $20,000,000 over the last decade:

| Fiscal Year | Budget for OFLC |
|---|---|
| 2014 | $61,973,000 |
| 2015 | $62,310,000 |
| 2016 | $62,310,000 |
| 2017 | $62,310,000 |
| 2018 | $62,310,000 |
| 2019 | $62,310,000 |
| 2020 | $68,810,000 |
| 2021 | $77,810,000 |
| 2022 | $79,810,000 |
| 2023 | $83,810,000 |

29. DOL's prolonged processing times is not a "resource issue."

30. And there has been no drastic increase in the number of applications submitted:

| Fiscal Year | Number of ETA 9089s Received |
|---|---|
| 2017 | 105,034 |
| 2018 | 104,360 |
| 2019 | 113,014 |
| 2020 | 115,133 |
| 2021 | 120,660 |
| 2022 | 141,951 |

31. DOL's historic performance data[3] explains the explosion in processing times.

32. When the audited cases and outliers are removed from DOL's data set, the data reveals that the mean or average processing time for PERM applications nearly doubled from 2018 to 2021:

**Decision Length Statistics in Days**
**(Certified, Non Audited, Non-Outlier Cases, 2018-2021)**

| | 2018 | 2019 | 2020 | 2021 | All |
|---|---|---|---|---|---|
| Sample Size | 51,684 | 60,887 | 61,922 | 52,056 | 226,549 |
| Mean | 93 | 82 | 166 | 180 | 130 |
| Median | 92 | 67 | 173 | 181 | 128 |
| Standard Deviation | 26 | 37 | 39 | 31 | 33 |

33. The standard deviation reveals a *highly variable* adjudication process.

34. For example, in 2019, a routine PERM took 37 days longer than the mean or average PERM processing time for the year. This deviation is significant considering the average processing time in in 2019 was only 2 and a half months.

35. Such high variability indicates that DOL does not decide routine, non-audited PERM applications on a first in, first out basis.

36. The lack of any consistent processing mechanism is further reflected by looking at how long it took DOL to decide PERM applications that were submitted to the OFLC on the same day.

37. For example, on October 28, 2020, the OFLC received 100 PERM applications.

38. There was a gap of 19 days between the quickest and the slowest decision time.

[3] DOL discloses quarterly performance data at https://www.dol.gov/agencies/eta/foreign-labor/performance (last visited Jan. 26, 2024).

39. The most common decision date (22 applications) was May 10, 2021. But 25 applications were decided on or after May 14, 2021, and 29 applications were decided on or before May 6, 2021.

40. Again, none of these applications were audited. And none were "outliers." But DOL's automated decision times varied by nearly three weeks. And this date is an example of a less variable adjudication pattern.

41. The typical variability range for applications submitted on the same day is 37 days.

42. The extreme variability in range of decision times demonstrates that OFLC does not decide PERM applications on a first in, first out basis *and* "line jumping" is built into its processing logic.

43. Today, DOL reports its decision time to be 363 days as previously mentioned.

44. Because this decision time is the result of an arbitrary decisionmaking process, the delay is unreasonable.

45. This delay harms the beneficiaries of PERM applications in various ways.

46. First, DOL's data reflects that a significant portion of PERM beneficiaries are specialty occupation workers ("H-1B"). This visa can only last 6 years. However, H-1B workers can get one year extensions if their employer gets a PERM approval before the beginning of their fifth year in H-1B status. Because PERM now takes nearly a year, these delays often prevent H-1B applicants from getting this extension.

47. Second, H-1B workers who have an approved I-140 Immigrant Visa Petition can get indefinite extensions of their H-1B while they await an immediately available immigrant visa number. But a vast majority of H-1B workers can only apply for an immigrant visa *after* DOL issues them a PERM. The nearly one year wait harms these workers.

48. Third, these delays prevent beneficiaries from applying for adjustment of status when visas are immediately available. This prevents them from acquiring lawful permanent residency and delays their residency periods for naturalization.

49. Fourth, the PERM delays prevent career advancement because employers often do not promote employees while the PERM is pending because the job duties may change and put at risk the PERM process and related immigrant visa application.

50. Additionally, these delays harm the employers because they are deprived of the consistent labor force for highly skilled workers in a tight labor market.

51. Finally, in situations like Mr. Krishna's, the delay cases them to depart the US as their H-1B "maxes out." This puts their employer in a situation where they lose a critical resource until this unreasonably, and unnecessarily long, bureaucratic process works out, and it puts the employee in a situation where they are unable to work and earn an income.

*Plaintiff Sanjay Krishna*

52. Plaintiff Sanjay Krishna is a citizen and national of India, but he has lived in the United States for years.

53. He has been in "H-1B" status for nearly 6 years.

54. In fact, he will hit his 6 year max on February 13, 2024

55. Mr. Krishna is a beneficiary of a PERM application filed on July 14, 2023. DOL assigend it receipt number G-100-23195-190138.

56. Without a decision on his PERM, Mr. Krishna will have to leave the United States, and he will not be able to return for months or possibly years, while his employer applies for an immigrant visa, gets it approved, applies for a new H1B, gets it approved, and then Mr. Krishna gets the new visa at a consulate and travels to the United States.

57. This adds additional costs to Mr. Krishna and his employer that would not otherwise be necessary.

58. Mr. Krishna will not be able to work during this time.

59. This will hurt his career, and it could cost him his position.

60. During his time outside of the United States he will be required to continue to pay for his bills in the United States—rent, insurance, utilities, etc.

61. There is no way for Mr. Krishna to remedy the harm to his career or get reimbursed by the Defendant for these financial losses.

62. In order to file the PERM, the employer has to show that there is not a US worker ready, willing, and able to do the position. Given that Mr. Krishna will not have to leave the US, this harm will be felt significantly as his employer will be without a key resource.

63. The harm to both Mr. Krishna and his employer will be irreparable.

**FIRST CAUSE OF ACTION**
**(APA – Unreasonable Delay for PERM decision)**

64. DOL has required, discrete duty to issue final decisions on PERM applications.

65. This Court "shall" therefore compel DOL to issue a final determination on Plaintiffs' pending PERM applications because DOL has "unreasonably delayed" final decision. 5 U.S.C. § 706(1).

66. DOL's PERM decision delays that are more than 60 days are unreasonably delayed because:

   a. DOL does not have a consistent processing logic; it decides PERM applications in an arbitrary and capricious way;

   b. DOL does not decide PERM applications on an first in, first out basis, DOL's data shows this;

c. DOL's adjudication process engages in blatant "line jumping" regularly deciding later filed cases before earlier filed cases;

d. Congress intended DOL to issue final PERM decisions within 60 days;

e. DOL, through regulation, intended to comply with Congress' intent to issue final PERM decisions within 60 days;

f. Congress intended for DOL to issue PERM decisions quickly enough to ensure job portability, a consistent labor pool for employers, and avoid job loss or unnecessary international travel for beneficiaries;

g. PERM delays beyond 60 days are not the result of a lack of resources because DOL's OFLC has record resources to decide these applications;

h. DOL has no "rule of reason" controlling the time that they take to issue final PERM decisions, the wide standard deviation in adjudication shows this to be true;

i. DOL OFLC has no competing interests that are higher than PERM applications because a vast majority of the process is automated by computers which can decide thousands of PERM applications a day;

j. Based on information and belief, DOL's technology has improved since 2005 when it created the PERM process with the intent of automating the PERM adjudication process.

k. DOL OFLC's delays are wholly unreasonable; and

l. DOL's delays are unreasonable for other reasons that Plaintiffs will raise and identify after discovery;

67. Plaintiff has waited more than 60 days for decisions;

68. There delays are therefore unreasonable.

69. These delays hurt Mr. Krishna.

70. These delays are substantially unjustified.

**PRAYER FOR RELIEF**

71. This Court should take jurisdiction of this case;

72. Declare all delays beyond 60 days as unreasonable;

73. Order DOL to take administrative action on Plaintiff's pending application immediately; and

74. If DOL audits Plaintiff's application, order DOL to issue a final decision on the PERM application within 10 days of the Plaintiff's response to the audit; and

75. All other orders necessary for justice.

January 29, 2024

Respectfully submitted,

s/Bernard P. Wolfsdorf
BERNARD P. WOLFSDORF
Mass Bar No. 107657
Wolfsdorf Rosenthal, LLP
1416 2nd Street
Santa Monica, CA 90401
Tel: (310) 570-4088
bernard@wolfsdorf.com

Attorney for Plaintiff